**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
————————————————————————

**JASON WIMBERLY,**

                          **Plaintiff,**               **20-cv-1870 (JGK)**

          **- against -**                     **MEMORANDUM**
                                           **OPINION AND ORDER**
**AUTOMOTIVEMASTERMIND INC. ET AL.,**

                          **Defendants.**
————————————————————————

**JOHN G. KOELTL, District Judge:**

        The pro se plaintiff Jason Wimberly brings this action

against the defendants, automotiveMastermind, Inc. ("aM"),

Christina Bouchot, Bari Baksbaum, Eric Daniels, and two unnamed

defendants. Wimberly's complaint includes four claims pursuant

to the Employee Retirement Income Security Act of 1974

("ERISA"), 29 U.S.C. § 1001 et seq.; common law claims for

defamation, conspiracy to tortiously interfere with an economic

advantage, intentional infliction of emotional distress,

negligence, tortious interference with at will employment, and

tortious interference with a prospective economic advantage; a

claim for conspiracy against civil rights pursuant to 42 U.S.C.

§ 1985; a claim for attorney malpractice; and claims pursuant to

the Racketeering Influenced and Corrupt Organization Act

("RICO"), 18 U.S.C. §§ 1961-1968. The named defendants move

dismiss the complaint for failure to state a claim pursuant to

Federal Rule of Civil Procedure 12(b)(6). For the reasons explained below, the motion is **granted.**

I

The following facts are drawn from the Complaint ("Compl.") and are accepted as true for the purposes of this motion.

The defendant aM sells access to a cloud-based software system in the automotive industry. Compl. ¶¶ 9-10. Bouchot is an attorney employed by Goodwin Procter who served as counsel to aM. Compl. ¶ 11. Daniels served as chief financial officer at aM. Compl. ¶ 12. Buksbaum was a senior human resources official at aM. Compl. ¶ 13. The plaintiff worked at aM as a salesperson between August 2017 and August 2018. Compl. ¶¶ 15, 17, 72.

In April 2018, Wimberly traveled to an event organized by aM in Dallas, Texas, at the Dallas Westin Park Central (the "Hotel"). Compl. ¶ 33. Upon returning from the trip, his supervisor, Carla Nurse, and Buksbaum asked to meet with Wimberly. Compl. ¶¶ 34-35. During this meeting, Nurse and Buksbaum informed Wimberly that the company received reports from other aM employees and a Hotel employee that Wimberly billed food and drinks to other people's rooms at the Hotel. Compl. ¶ 36. Nurse and Buksbaum also informed Wimberly that a female employee had accused him of refusing to leave her desk after she asked him to leave. Compl. ¶ 38. Wimberly denied these

2

Case 1:20-cv-01870-JGK   Document 47   Filed 01/22/21   Page 3 of 18

allegations but Nurse and Buksbaum nonetheless issued him a
final warning based on these incidents and asked him to sign it,
which he refused to do without an opportunity to review it and
receive counsel. Compl. ¶¶ 37-39.

After Wimberly elevated the issue to various senior
officers at aM, he was informed by Buksbaum's supervisor that
they would remove any mention of theft and "food and drink" from
the warning document but leave the other allegations. Compl.
¶¶ 45-50. Wimberly believed that he was being pressured to sign
the document, which he believed still contained inaccuracies,
under the alleged false pretense that his signature would merely
signify acknowledgement of the warning and he refused to sign
it. Compl. ¶¶ 56-57.

Unable to receive a satisfactory response about the
identity of the accusers and to clear his name internally,
Wimberly filed a petition for pre-action discovery in New York
State Supreme Court on July 23, 2018. Compl. ¶ 2, 61. Roughly
three weeks later, on a video conference call during a day off,
Nurse and Buksbaum informed Wimberly that his employment was
being terminated. Compl. ¶ 68. Buksbaum promised him six weeks
of severance pay and a COBRA premium of $750. Compl. ¶ 69.
Afterwards, aM repeatedly demanded that Wimberly discontinue his
state court pre-action discovery petition and waive all his

rights to future actions before any severance would be paid. Compl. ¶ 70.

Wimberly alleges that aM maintains a plan, policy, or employee welfare benefit plan that is subject to ERISA. Compl. ¶ 71. As such, pursuant to Section 502 of ERISA, 29 U.S.C. § 1132, Wimberly claims that he is owed severance under the plan which was denied to him when he refused to waive his rights to future actions and to abandon his state court petition. Compl. ¶¶ 75-80. Wimberly also alleges that the defendants breached their fiduciary duty in violation of ERISA by denying the existence of or refusing to provide details about a plan under the Act. Compl. ¶¶ 89-101. Furthermore, Wimberly claims that the defendants violated Sections 510 and 511 of ERISA, 29 U.S.C. §§ 1140-1141, by conditioning the payout of severance on his agreement not to pursue legal action. Compl. ¶¶ 103-07.

Wimberly alleges that the unnamed defendants reported untrue accusations about him to his superiors out of discriminatory animus on account of his race, sex, and disabled status, in order to get him terminated, and the company and its officers failed to conduct a reasonable investigation. Compl. ¶¶ 115-17, 140-43. On those bases, his complaint includes claims of defamation, civil conspiracy to tortiously interfere with an economic advantage, intentional infliction of emotional distress ("IIED"), tortious interference with at will employment,

4

negligence, tortious interference with a prospective economic advantage, conspiracy against civil rights pursuant to 42 U.S.C. § 1985, and RICO violations. Finally, the complaint also includes a claim of attorney malpractice against Bouchot for her role in aM's constructive denial of severance benefits.


## II

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007).[1] The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all alterations, citations, footnotes, and internal quotation marks in quoted text.

misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678
(2009).

While the Court should construe the factual allegations in
the light most favorable to the plaintiff, "the tenet that a
court must accept as true all of the allegations contained in
the complaint is inapplicable to legal conclusions." Id. When
presented with a motion to dismiss pursuant to Rule 12(b)(6),
the Court may consider documents that are referenced in the
complaint, documents that the plaintiff relied on in bringing
suit and that are either in the plaintiff's possession or that
the plaintiff knew of when bringing suit, or matters of which
judicial notice may be taken. See Chambers v. Time Warner, Inc.,
282 F.3d 147, 153 (2d Cir. 2002).

When faced with a pro se complaint, the Court must
"construe [the] complaint liberally and interpret it to raise
the strongest arguments that it suggests." Chavis v. Chappius,
618 F.3d 162, 170 (2d Cir. 2010). "Even in a pro se case,
however, . . . threadbare recitals of the elements of a cause of
action, supported by mere conclusory statements, do not
suffice." Id. Thus, although the Court is "obligated to draw
the most favorable inferences" that the complaint supports, it
"cannot invent factual allegations that [the plaintiff] has not
pled." Id.; see also Yajaira Bezares C. v. The Donna Karan Co.

Store LLC, No. 13-cv-8560, 2014 WL 2134600, at *1 (S.D.N.Y. May 22, 2014).

### III

### A

The defendants argue that Wimberly's claims under ERISA should be dismissed because the complaint fails to show the existence of a plan or policy subject to ERISA.

ERISA empowers "employee welfare benefit plan" beneficiaries to bring a civil action to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B) & (e)(1); see also Schonholz v. Long Island Jewish Med. Ctr., 87 F.3d 72, 75 (2d Cir. 1996). A plan "need not be a formal written document," but can be "established if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits." Guilbert v. Gardner, 480 F.3d 140, 146 (2d Cir. 2007). However, "a mere allegation that an employer or employee organization ultimately decided to provide an employee welfare benefit is not enough to invoke ERISA's coverage." Id. (quoting Scott v. Gulf Oil Corp., 754 F.2d 1499, 1504 (9th Cir. 1985)). Instead, for liability under

ERISA, there must first be a "plan . . . covered by ERISA." Giordano v. Thomson, 564 F.3d 163, 168 (2d Cir. 2009).

In the severance context, the term "employee welfare benefit plan" applies to "employer undertakings or obligations to pay severance benefits . . . only where such an undertaking or obligation requires the creation of an ongoing administrative program." Schonholz, 87 F.3d at 75. In contrast, "the promise to make a one-time, lump-sum payment triggered by a single event will rarely if ever implicate the need for uniformity that Congress sought" in passing ERISA. Okun v. Montefiore Med. Ctr., 793 F.3d 277, 279 (2d Cir. 2015). The Court of Appeals for the Second Circuit has identified "three non-exclusive factors to help determine whether an employer's particular undertaking involves the kind of ongoing administrative scheme inherent in a plan:"

> (1) whether the employer's undertaking or obligation requires managerial discretion in its administration; (2) whether a reasonable employee would perceive an ongoing commitment by the employer to provide employee benefits; and (3) whether the employer was required to analyze the circumstances of each employee's termination separately in light of certain criteria.

Id.

Here, besides the offer of a one-time, lump-sum severance payment of six weeks of salary, the only fact that Wimberly alleges to support his contention that aM had a "plan" within

the meaning of ERISA is that two other aM employees told him
they received an offer of severance at their termination. These
facts do not plausibly establish there was an ongoing
administrative program required to support the finding of an
ERISA plan. First, aM's offer of six weeks of salary required
merely "simple arithmetical calculation," thus obviating any
need for managerial discretion or ongoing administrative
efforts. James v. Fleet/Norstar Fin. Grp., 992 F.2d 463, 467 (2d
Cir. 1993). Second, there was no ongoing commitment to provide
benefits considering the one-time nature of the severance offer.
See Fort Halifax Packing Co. v. Coyne, 482 U.S. 1, 12 (1987)
("[A] one-time obligation in the future simply creates no need
for an ongoing administrative program for processing claims and
paying benefits."). Third, there are no facts to suggest that
the employer was required to analyze the circumstances of each
employee's termination separately in light of certain
predetermined criteria or, if they did, what those criteria
might have been. Instead, the complaint supports the reasonable
inference that aM and its managers made an ad hoc determination
that a severance payment in exchange for release of all claims
would facilitate a speedy dissolution of their relationship with
Wimberly.

The allegation that other employees, even at great numbers,
also received severance offers is irrelevant to the existence of

an ERISA plan. For example, in James, the Court of Appeals held that a company's offer to pay all employees of a soon-to-be-closed service center an incentive severance payment did not constitute a plan. 992 F.2d at 466. Instead of the size or scale of the program, the relevant consideration was that the undertaking "require[d] no administrative scheme whatsoever to meet the employer's obligation. The employer assume[d] no responsibility to pay benefits on a regular basis, and thus face[d] no periodic demands on its assets that create a need for financial coordination and control." Id. Similarly, the offer of a one-time payment to Wimberly and possibly some other aM employees does not, without more, demonstrate the existence of an ERISA plan.

Accordingly, because Wimberly fails to state sufficient facts to allege plausibly the existence of an ERISA plan, his claims under ERISA are **dismissed** without prejudice.

## B

The defendants next argue that Wimberly's defamation claim against the unnamed defendants is time-barred.

Under New York law, "an action to recover damages for . . . libel [or] slander" must be "commenced within one year," N.Y.C.P.L.R. §215(3), "measured from the date of publication of

the allegedly defamatory statement." <u>Blair v. Meth</u>, 977 N.Y.S.2d 318, 318 (App. Div. 2013).

Here, the alleged publication occurred in April 2018 at the latest, nearly two years before Wimberly filed his complaint in March 2020. Wimberly argues that the claim should nonetheless survive based on equitable tolling and relation back doctrines. However, neither doctrine provides a sufficient basis for disregarding the statute of limitations in this case.

"Under New York law, the doctrines of equitable tolling or equitable estoppel 'may be invoked to defeat a statute of limitations defense when the plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action.'" <u>Abbas v. Dixon</u>, 480 F.3d 636, 642 (2d Cir. 2007) (quoting <u>Doe v. Holy See</u>, 793 N.Y.S.2d 565 (App. Div. 2005)). Wimberly has no argument that he was induced by fraud, deception, or misrepresentations by the defendants to refrain from filing a timely complaint. Instead, the complaint demonstrates that he had access to the same operative facts since April 2018 and could have filed the complaint within the limitations period. As such, there is no basis for equitable tolling or equitable estoppel.

Under Federal Rule of Civil Procedure 15(c), an amended complaint can "relate back to the date of the original pleading if four conditions are met: (1) the claim must have arisen out

of conduct set out in the original pleading; (2) the party to be brought in must have received such notice that it will not be prejudiced in maintaining its defense; (3) that party [knew or] should have known that, but for a <u>mistake of identity</u>, the original action would have been brought against it; and . . . (4) the second and third criteria are fulfilled within [the period provided by Rule 4(m) for serving the summons and complaint], and . . . the original complaint [was] filed within the limitations period." <u>Ceara v. Deacon</u>, 916 F.3d 208, 211 (2d Cir. 2019) (emphasis added). Wimberly argues that under this principle, he should be excused for failing to include the names of the unnamed defendants <u>and</u> that the complaint should relate back to his state court pre-action discovery petition. This argument fails in every respect. First, under Second Circuit law, "amendments to 'John Doe complaints' to add real names do not relate back under Rule 15(c)(1)(C) because such amendments were made not to correct a mistake but to correct a lack of knowledge." <u>Ceara v. Deacon</u>, 916 F.3d 208, 211-12 (2d Cir. 2019). Second, an amendment can only relate to the original complaint and that complaint would need to be filed within the limitations period, which was not the case here. Third, in any event, Wimberly still has not identified the unnamed defendants.

Accordingly, the defamation claim is **dismissed.**

C

Wimberly failed to address the arguments brought by the defendants with respect to the claims of conspiracy to tortiously interfere with an economic advantage, intentional infliction of emotional distress, negligence, tortious interference with at will employment, and tortious interference with a prospective economic advantage, conspiracy against civil rights pursuant to 42 U.S.C. § 1985, and attorney malpractice. Because Wimberly did not address the defendant's motion to dismiss with regard to these claims, they are deemed abandoned. See Dineen v. Stramka, 228 F. Supp. 2d 447, 454 (S.D.N.Y. 2002) (finding that plaintiff's failure to address claims in opposition papers "enables the Court to conclude that [the plaintiff] abandoned them"); Anti-Monopoly, Inc. v. Hasbro, Inc., 958 F. Supp. 895, 907 n.11 (S.D.N.Y. 1997) (holding that plaintiff's failure to provide any argument opposing defendant's motion "constitutes abandonment of the issue" and that "provides an independent basis for dismissal"); Okla. Police Pension & Ret. Sys. v. United States Bank Nat'l Ass'n, 291 F.R.D. 47, 66 (S.D.N.Y. 2013) (dismissing claims abandoned by the plaintiff in its response to a motion to dismiss). Accordingly, these claims are **dismissed.**

D

Finally, the defendants argue that the RICO claims should be dismissed for the plaintiff's failure to state a claim.

"To establish a RICO claim, a plaintiff must show: (1) a violation of the RICO statute, 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962." De Falco v. Bernas, 244 F.3d 286, 305 (2d Cir. 2001). To establish a substantive RICO violation, a plaintiff must show a "pattern of racketeering activity," 18 U.S.C. § 1962(a)-(c), and to establish a RICO conspiracy, a plaintiff must show a conspiracy to commit a substantive RICO violation, id. § 1962(d). Thus, "[u]nder any prong of § 1962, a plaintiff in a civil RICO suit must establish a pattern of racketeering activity." GICC Capital Corp. v. Tech. Fin. Grp., 67 F.3d 463, 465 (2d Cir. 1995). To establish a pattern, "[t]he plaintiff must plead at least two predicate acts [enumerated in § 1961(5)] and must show that the predicate acts are related and that they amount to, or pose a threat of, continuing criminal activity." Id. "The latter so-called 'continuity' requirement can be satisfied either by showing a 'closed-ended' pattern--a series of related predicate acts extending over a substantial period of time—or by demonstrating an 'open-ended' pattern of racketeering activity that poses a threat of continuing criminal conduct beyond the period during

14

which the predicate acts were performed." Spool v. World Child
Int'l Adoption Agency, 520 F.3d 178, 183 (2d Cir. 2008).

As an initial matter, Wimberly's complaint does not clearly
establish what injury to business or property the alleged RICO
violations caused. Wimberly avers that he was deprived of his
separation benefits, and his ability to exercise his rights.
However, the complaint fails to shows such a deprivation
occurred. Instead, the complaint shows that Wimberly received an
offer of a severance payment—one that he was not otherwise
entitled to—and that offer was conditioned on a release of all
claims. He chose not to sign the release and the employer
therefore did not release the benefits. Furthermore, his state
court action and this action demonstrate that he was not
deprived of his right to sue.

In addition, Wimberly failed to plead facts to support the
allegation that a RICO violation occurred because the complaint
does not satisfy the continuity requirement. "To satisfy closed-
ended continuity, the plaintiff must prove a series of related
predicates extending over a substantial period of time." Id. at
184. "[T]he duration of a pattern of racketeering activity is
measured by the RICO predicate acts that the defendants are
alleged to have committed." Id. Here, all events described in
the complaint took place between April 2018 and September 2018,
a period of at most six months. While there is no bright line

15

for the length of time required to demonstrate continuity, the Court of Appeals for the Second Circuit has held that periods of as much as 16 and 18 months are insufficient and has never held a period of less than two months to be sufficient to establish closed-ended continuity. See id. at 185; DeFalco v. Bernas, 244 F.3d 286, 322 (2d Cir. 2001). Therefore, Wimberly cannot show a closed-ended continuity resulted from the events that occurred over a period of six months.

Similarly, the complaint fails to allege an open-ended continuity. "To satisfy open-ended continuity, the plaintiff . . . must show that there was a threat of continuing criminal activity beyond the period during which the predicate acts were performed. This threat is generally presumed when the enterprise's business is primarily or inherently unlawful. When the enterprise primarily conducts a legitimate business, however, no presumption of a continued threat arises. In such cases, there must be some evidence from which it may be inferred that the predicate acts were the regular way of operating that business, or that the nature of the predicate acts themselves implies a threat of continued criminal activity." Spool, 520 F.3d at 185. Here, there is no indication that the enterprise's business is primarily or inherently unlawful and therefore no presumption of a continued threat arises. Furthermore, the complaint evinces no basis for a plausible inference that the

predicate acts were the regular way of operating the business or that the acts themselves implied a threat of continued criminal activity. To demonstrate continuity, Wimberly asserts that the illegal "conduct continues today because <u>plaintiff</u> remains unwilling to waive his rights to sue" in exchange for the severance payment. Compl. ¶ 216 (emphasis added). However, this allegation does not show any continued conduct on the part of the defendants; instead, it merely attempts to attribute to the defendants the plaintiff's own conduct.

Accordingly, because the complaint does not allege facts to satisfy the continuity requirement, and thus fails to allege a RICO violation, the RICO claim is **dismissed** without prejudice.

## CONCLUSION

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. The motion to dismiss is **granted** without prejudice to repleading the ERISA claims and the RICO claims. The remaining claims are dismissed with prejudice as time-barred or abandoned. The plaintiff may file an amended complaint within 30 days of the date of this order. If the plaintiff fails to file an amended complaint, the ERISA claims and the RICO claims will also be dismissed with prejudice. If the plaintiff files an amended complaint, the defendant shall

Case 1:20-cv-01870-JGK   Document 47   Filed 01/22/21   Page 18 of 18

move or answer within the time limits set out by the Federal Rules of Civil Procedure. No pre-motion conference is necessary. The Clerk is directed to close Docket Nos. 12, 29, 34. The Clerk is directed to mail a copy of this order to the <u>pro se</u> plaintiff.

**SO ORDERED.**

**Dated:**    **New York, New York**
         **January 22, 2021**            /s/ John G. Koeltl
                                  _____
                                         John G. Koeltl
                               **United States District Judge**